

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

MAR 2 5 2009
Mar 25, 2009
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 1041 |
| vs. | ) | Judge John W. Darrah |
| | ) | |
| DAVID LEE, | ) | |
| also known as "David Young" | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant DAVID LEE, and his attorney, MICHAEL GILLESPIE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with exporting commodities without authorization, in violation of Title 50, United States Code, Sections 1702 and 1705(b), and Title 15, Code of Federal Regulations, Sections 742.6 and 764.2(a) (Counts One and Two), and making materially false statements, in violation of Title 18, United States Code, Section 1001(a)(1) (Count Three).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charge to Which Defendant is Pleading Guilty**

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with exporting commodities without authorization, in violation of Title 50, United States Code, Sections 1702 and 1705(b), and Title 15, Code of Federal Regulations, Sections 742.6 and 764.2(a). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## **Factual Basis**

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Defendant acknowledges that, at times relevant to the acts described below, the President of the United States of America, by virtue of the International Emergency Economic Powers Act ("IEEPA") and other authorities, was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States.

Defendant further acknowledges that: (a) the United States Department of Commerce, by virtue of the Export Administration Act ("EAA") had the authority to regulate the export of commodities, technology, and software (collectively referred to as "goods") from the United States to foreign countries; (b) the EAA authorized the Secretary of Commerce to

2

prohibit or curtail the export of goods for reasons including nuclear nonproliferation, national security, regional stability, and foreign policy; and (c) the Secretary of Commerce implemented the authority provided by the EAA through the Export Administration Regulations ("EAR").

Defendant further acknowledges that although the EAA has been in lapse since August 21, 2001, the President, through Executive Order 13222, has continued the EAR in effect under the authority granted to the President by IEEPA.

Defendant further acknowledges that Section 774 of the EAR provided for the Commerce Control List ("CCL"), which was maintained and regulated by Department of Commerce, Bureau of Industry and Security ("BIS"), and that the CCL included items such as commodities, software and technology. Also, individual items on the CCL were identified by an Export Control Classification Number ("ECCN"), a set of digits and a letter that identifies the entries and the type of controls associated with the items contained in the entry.

Defendant further acknowledges that the CCL contained an entry designated as ECCN 6A003.b.4., and that this entry pertained to cameras containing a micro bolometer focal plane array that senses radiation in the 7-14 micron spectral band and uses a 320 x 240 element detector array ("thermal imaging cameras"). Items under ECCN 6A003.b.4 were controlled for export by BIS for regional stability reasons. Export of commodities classified under ECCN 6A003.b.4 to South Korea required a license from BIS.

3

Defendant further acknowledges that failure to obtain a license before exporting commodities classified under ECCN 6A003.b.4 to South Korea was a violation.

Defendant admits that he was a United States citizen and owner of Lucena Technology, Incorporated ("Lucena"), an Illinois company located and operated in and around Park Ridge, Illinois. Lucena was primarily involved in the export of various commodities as requested from foreign companies.

On or about June 13, 2007, Lucena issued a purchase order to a supplier herein identified as "Company A" for seven thermal imaging cameras classified under ECCN 6A003.b.4 for a total price of $55,125. On or about June 26, 2007, Company A shipped the seven cameras to defendant. That same day, Company A advised defendant in an invoice that the cameras required an export license. Nevertheless, defendant arranged for shipment of the cameras upon his receipt from Company A to a company herein identified as "Company B," located in South Korea.

More specifically, on or about June 29, 2007, at Park Ridge, in the Northern District of Illinois, and elsewhere, defendant did knowingly and willfully export commodities, namely, seven thermal imaging cameras (model 2000B with 25mm lens), to South Korea without the required prior authorization or license. In return for the sale and export of these cameras to Company B in Korea, defendant received $59,500.

4

Defendant admits that at no point did either Lucena or defendant receive a license from BIS to export any thermal imaging cameras or any other commodities classified under ECCN 6A003.b.4 to South Korea.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $1,000,000.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2008 Guidelines Manual.

   b. **Offense Level Calculations.**

    i. The base offense level for the charge in Count One of the indictment is 14, pursuant to Guideline §2M5.1(a)(2);

    ii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a 2-level reduction in the offense level is appropriate.

   c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 12, which,

6

when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 10 to 16 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

       e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

       f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant

shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.     The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed. Defendant is free to recommend any sentence he deems appropriate.

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

## Forfeiture

14.     The indictment charges that defendant is liable to the United States for approximately $59,500. However, only $4,375 plus interest on this $4,375 amount calculated from June 29, 2007 to today's date, are subject to forfeiture because those funds constitute proceeds traceable to the violation alleged in Count One of the indictment. By entry of a guilty plea to Count One of the indictment, defendant acknowledges that the property identified above is subject to forfeiture, specifically $4,375 plus interest on this $4,375 amount calculated from June 29, 2007 to today's date.

15.     Defendant agrees to the entry of a forfeiture judgment in the amount of $4,375 plus interest on this $4,375 amount calculated from June 29, 2007 to today's date, and against the property identified above, in that this property is subject to forfeiture.   Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law.  Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture.

16.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

9

## Presentence Investigation Report/Post-Sentence Supervision

17.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to

10

defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

20.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 1041.

21.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and

11

speedy trial.  i.  The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

a.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

b.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

13

## **Other Terms**

23.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

14

26.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:  _3-25-09_


PATRICK J. FITZGERALD
United States Attorney

DAVID LEE
Defendant


JOSEPH ALESIA
Assistant U.S. Attorney

MICHAEL GILLESPIE
Attorney for Defendant


15